FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC -5 PM 4:31

Cabot Christianson, Esq.
CHRISTIANSON & SPRAKER
911 W. 8th Avenue, Suite 201
Anchorage, AK 99501
Telephone: (907) 258-6016
Telefax: (907) 258-2026
Attorneys for Plaintiffs

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| South Coast, Inc. and the barge SUNNY POINT, <br><br> Plaintiffs, <br><br> v. <br><br> Alaska Marine Surveyors, Inc., <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) **Case No. A05-0090 CV (JWS)** <br> ) <br> ) <br> ) <br> ) <br> ) |

### PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT FOR INJURIOUS FALSEHOOD; AND PLAINTIFFS' CROSS-MOTION FOR SUMMARY JUDGMENT ON COUNT IV

For the reasons stated herein, plaintiffs are entitled to summary judgment on Count IV of defendant Alaska Marine Surveyors, Inc.'s (AMS) counterclaim alleging injurious falsehood, and AMS's pending motion for summary judgment on that same cause of action should be denied.

PAGE 1    OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD;
AND CROSS-MOTION FOR SUMMARY JUDGMENT RE COUNT IV
H:\2501\SCOAST V. AK MARINE SURVEYORS\SOUTH COAST OPP SJ INJURIOUS
FALSEHOOD AND CROSS MSJ.WPD

48

## Facts

On September 15, 2004, Thomas L. Crandall, president of South Coast, executed a Bill of Sale which warranted that the vessel Sunny Point was free and clear of liens. The sales price for the vessel was $550,000, to be paid $506,000 in cash plus equipment valued at $44,000. *Affidavit of Thomas L Crandall* (hereafter, *Second Crandall Affidavit*) ¶2. Crandall delivered the Bill of Sale to Kim Marine, in Seattle, an experienced closer of maritime sales. Crandall assumed that the liens of record would be satisfied at closing. That is, that Kim would hold the bill of sale until closing, and would satisfy any liens that existed at the date of closing out of the sale proceeds. *Second Crandall Affidavit*, ¶ 4.

As of September 15, 2004, Mr. Crandall did not know who Jack McFarland was, or Alaska Marine Surveyors. AMS's statement to Eric Collins, head of the marine division of South Coast that AMS intended to lien the vessel, was not passed on to Mr. Crandall. *Second Crandall Affidavit*, ¶ 7.

AMS's lien is dated September 28, 2004, and recorded October 5, 2004. The bill of sale to Box-It was recorded October 6, 2004.

For reasons that are unclear, two liens that were filed before October 6, 2004, were not satisfied at closing. One is a $1,392.50 lien filed August 5, 2004, by Island Tug & Barge, and the other is the lien filed by AMS. Crandall does not know how or why these liens escaped Kim Marine's attention. *Second Crandall Affidavit*, ¶ 9. Upon learning about the existence of the Island Tug & Barge lien (through AMS's motion for summary judgment for

PAGE 2   OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD;
AND CROSS-MOTION FOR SUMMARY JUDGMENT RE COUNT IV
H:\2501\SCOAST V. AK MARINE SURVEYORS\SOUTH COAST OPP SJ INJURIOUS
FALSEHOOD AND CROSS MSJ.WPD

LAW OFFICE OF
CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, SUITE 302 • ANCHORAGE, ALASKA 99501
PHONE: (907) 258-6016 • FAX: (907) 258-2026

injurious falsehood), South Coast sent $1,392.50 to Kim Marine with instructions to have the lien removed. *Second Crandall Affidavit* ¶ 10.

### Count IV - Publication of Injurious Falsehood

In *Zamarello v. Yale*, 514 P.2d 228 (Alaska, 1973), the Alaska Supreme Court held that a lis pendens and quitclaim deed filed by Peter Zamarello were absolutely privileged from a claim of slander of title asserted by the property's owner. The court noted, in passing, that "An action for 'slander of title' in essence arises out of an injurious falsehood.[1]" *Id.* at 229. Neither this case nor any other Alaska case has discussed the doctrine of injurious falsehood to any significant extent, but Alaska courts have traditionally relied on the Restatement (Second) of Torts.[2] In *Lawson v. Helmer*, 77 P.3d 724, 727 (Alaska 2003), the Alaska Supreme Court stated that "[i]n recognizing the privilege for the filing of a quitclaim deed related to judicial proceedings, *Zamarello* effectively adopted the Restatement (Second) of Torts § 587 ..." Accordingly, the Restatement is an authoritative expression of Alaska state law in the area.

The subject of injurious falsehood, including slander of title and trade libel, is handled in Chapter 28 of the Restatement. Section 623A states the general principle as follows:

> **One who publishes a false statement harmful to the interests of another is subject to liability for pecuniary loss resulting to the other if**

---

[1] [Footnote 2 to opinion] 'Undoubtedly, the best and most inclusive name for the tort is that of 'injurious falsehood, coined by Sir John Salmond, but it cannot be pretended that thus far the courts have seen fit to make any use of it.' Prosser, Law of Torts 916 (4th ed. 1971).

[2] See, for example, *Ellison v Plumbers and Steam Fitters* 118 P.3d 1070, 1077 (Alaska 2005) ("We look to the Restatement (Second) of Torts for guidance..." on aiding and abetting discrimination claim issue)

PAGE 3       OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD;
             AND CROSS-MOTION FOR SUMMARY JUDGMENT RE COUNT IV
             H:\2501\SCOAST V. AK MARINE SURVEYORS\SOUTH COAST OPP SJ INJURIOUS
             FALSEHOOD AND CROSS MSJ.WPD

LAW OFFICE OF
CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, SUITE 302 • ANCHORAGE, ALASKA 99501
PHONE: (907) 258-6016 • FAX: (907) 258-2026

> (a) he intends for publication of the statement to result in harm to interests of the other having a pecuniary value, or either recognizes or should recognize that it is likely to do so, and
> (b) he knows that the statement is false or acts in reckless disregard of its truth or falsity.

Comment a, Illustration 1, gives an example of this principle:

> A, knowing his statement to be false, tells immigration authorities that B does not have sufficient assets for admission to the United States under its immigration rules. As a result B is detained for a week at the immigration station, and suffers pecuniary loss. A is subject to liability to B.

In order for a publisher to have the "intent ... to result in harm" required by Section 623A, Comment b explains that:

> The publisher must, however, know enough of the circumstances so that he should as a reasonable man recognize the likelihood that some third person will act in reliance upon his statement, or that it will otherwise cause harm to the pecuniary interests of the other because of the reliance.

An example of what does *not* establish the necessary intent is given at Comment a, Illustration 6:

> A, in the presence of a circle of friends, casually says that Blackacre is owned by B. A knows that his statement is false and that Blackacre is owned by C. As a result of the statement one of A's friends who had intended to buy Blackacre from C does not do so. Unless A know that a prospective purchaser was present or that the statement was likely to reach him, A is not liable to C.

A key element of the tort of injurious falsehood is 623A(b)'s requirement that the statement be false *and* that the publisher either knew that the statement was false or that he did not have the basis of knowledge or belief professed by his assertion. Comment a, Illustration 7, gives an example of a statement that is false, but nevertheless not actionable:

PAGE 4   OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD;
AND CROSS-MOTION FOR SUMMARY JUDGMENT RE COUNT IV
H:\2501\SCOAST V. AK MARINE SURVEYORS\SOUTH COAST OPP SJ INJURIOUS
FALSEHOOD AND CROSS MSJ.WPD

A, advertising his cigarettes, broadcasts over television a listing and rating of the ten most popular tunes of the week. In doing so he omits songs published by B, which are in fact among the ten most popular. As a result B loses customers for his songs. A believes that his rating is correct and that he has made a sufficient investigation to justify it, although a reasonably diligent investigation would have disclosed the facts. A is not liable to B.

The Restatement observes that a statement of mere opinion may not be actionable.

Comment e explains:

The common law rule has been that the injurious statement might be one of fact or opinion. In this regard it was similar to the common law rule for defamation. The defamation rule has now been changed, and an expression of mere opinion is no longer actionable unless it is found to imply the existence of undisclosed defamatory acts justifying it. (See §566). This new rule is held to derive from the Constitution (See Comment c). A similar rule may now apply to injurious falsehood, either because the constitution requires it or through decisions of the state courts by way of analogy to the similar tort of defamation. The blackletter to this Section does not purport to lay down a specific rule on this issue. It uses the single word, "statement," without indicating whether the term is confined to a statement of fact or includes both fact and opinion.

§ 624 of the Restatement sets forth the special rule for injurious falsehood relevant to disparagement of another's property interest - slander of title.

The rules on liability for the publication of an injurious falsehood stated in § 623A apply to the publication of a false statement disparaging another's property rights in land, chattels or intangible things, that the publisher should recognize to result in pecuniary harm to the other through the conduct of third persons in respect to the other's interests in the property.

Although § 624's slander of title rule most commonly applies to another's ownership of a particular property, it can also apply to a holder of a mortgage or lien. Restatement (Second) of Torts, § 624, Comment c. However, as noted previously with respect to injurious falsehoods

PAGE 5   OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD;
AND CROSS-MOTION FOR SUMMARY JUDGMENT RE COUNT IV
H:\2501\SCOAST V. AK MARINE SURVEYORS\SOUTH COAST OPP SJ INJURIOUS
FALSEHOOD AND CROSS MSJ.WPD

generally, the slander of title requires that the publisher is liable only if reliance on the falsehood is reasonably foreseeable.

> In order for the publisher of disparaging matter to be liable under the rule stated in this Section it must be published under such circumstances as would lead a reasonable man to expect that the third person who has acted or refrained from acting in reliance upon it would do so or that its publication might determine some third person not to buy or lease the property that it disparaged.

Some statements otherwise actionable as injurious falsehoods are nevertheless privileged. Most significantly, a document may not be a slander of title if it itself is the subject of litigation. This was the holding in the *Zamarello* case. In that case, a quitclaim deed was recorded in which Mulenos was grantor and Gialopsos was grantee. The following day, a previously executed quitclaim deed was recorded in which Mulenos was grantor and Zamarello was grantee. Zamarello lost a quiet title action. The jury found that Zamarello recorded his deed at a time when Gialopsos and his brother were the sole owners of the property. Zamarello knew at the time he recorded his deed that he did not have an interest in the property, and that the recordation of the Zamarello deed damaged Gialopsos and his brother to the extent of $36,557. Even with these strong findings of fact, the Alaska Supreme Court reversed the judgment against Zamarello, and found that Zamarello's deed was absolutely privileged. The court relied upon § 638 of the Restatement of Torts (1938) which provided:

> A party to a private litigation .... has an absolute privilege to disparage another's property in .... the institution of or during the course and as a part of a judicial proceeding in which he participates if the disparagement has some relation thereto.

PAGE 6   OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD;
AND CROSS-MOTION FOR SUMMARY JUDGMENT RE COUNT IV
H:\2501\SCOAST v. AK MARINE SURVEYORS\SOUTH COAST OPP SJ INJURIOUS
FALSEHOOD AND CROSS MSJ.WPD

In *Lawson v. Helmer*, 77 P.3d 724, 727 (Alaska 2003), the Alaska Supreme Court stated that "[i]n recognizing the privilege for the filing of a quitclaim deed related to judicial proceedings, *Zamarello* effectively adopted the Restatement (Second) of Torts § 587 ..." § 587 in the Restatement (Second) of Torts replaces § 638 of the First Restatement of Torts and provides:

> A party to a private litigation or a private prosecutor or defendant in a criminal prosecution is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Applying these principles, and the requirements of § 623A, with the gloss provided by § 624, to the case at bar quickly leads to the conclusion that South Coast is not liable. The "statement" in question is South Coast's statement, contained in the bill of sale to Box-It, that the vessel is free and clear of liens. The "interests of another" are the lien interests of Alaska Marine Surveyors. The bill of sale was delivered to, and intended to be relied upon, by Box-It, LLC, the purchaser of the vessel.

*Statement not false.* AMS had not recorded its lien at the time South Coast executed its bill of sale. Mr. Crandall executed the bill of sale on September 15, 2004. AMS executed its lien and recorded it on October 5, 2004. At the time Mr. Crandall executed the bill of sale, the statements in the bill of sale were true as to AMS.

*Statement not made with reckless disregard of its truth or falsity.* Crandall knew, or reasonably believed, that Kim Marine, an experienced marine broker, would pay, escrow, or

PAGE 7   OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD;
AND CROSS-MOTION FOR SUMMARY JUDGMENT RE COUNT IV
H:\2501\SCOAST V. AK MARINE SURVEYORS\SOUTH COAST OPP SJ INJURIOUS
FALSEHOOD AND CROSS MSJ.WPD

otherwise cause to be satisfied any maritime liens filed as of the closing date. Second Crandall Affidavit, ¶ 4, 5. There was nothing reckless about this assumption.[3]

*Statement not made with intent to harm AMS's interests.* At the time the bill of sale was executed, Mr. Crandall did not know who AMS was. *Id.* at ¶ 6. Crandall assumed that any liens as of closing would be paid, escrowed, or otherwise satisfied at closing. *Id.* at ¶ 4. Accordingly, the statement was not made with the intent to harm AMS's interest, as required by clause (a) of §623A.

*No action on statement adverse to AMS.* The lynchpin of injurious falsehood, or slander of title, is action by a third party in a manner adverse to the claimant: in the examples given above, the immigration authorities detaining an immigrant, a potential purchaser of Blackacre not extending an offer, a songwriter's audience listening to fewer songs, etc.

There is no such adverse response in this case. The only entity who had any reaction to the bill of sale, and the only entity that could reasonably be expected to rely upon the bill of sale, was Box-It. Box-It's response was to purchase the vessel. This response did not harm AMS, because as a matter of law, AMS's lien was unaffected by the sale. If anything, the sale helped AMS by adding an additional potentially responsible party who could remove the lien if South Coast failed to respond. AMS has complained loud and long in this litigation about the possibility that South Coast might file bankruptcy, and the sale has removed that risk. In a normal transaction, the sale would have occasioned the lien being satisfied or escrowed around.

---

[3] For this reason, AMS's allegations concerning criminal liability do not warrant the dignity of a response.

PAGE 8   OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD;
AND CROSS-MOTION FOR SUMMARY JUDGMENT RE COUNT IV
H:\2501\SCOAST V. AK MARINE SURVEYORS\SOUTH COAST OPP SJ INJURIOUS FALSEHOOD AND CROSS MSJ.WPD

Only the marine broker's error in missing AM's lien at closing cause the lien not to be satisfied as part of the sale.

AMS's real complaint is not that the bill of sale was inaccurate at the time it was executed, but that AMS's lien was not satisfied at the time of closing, by which time the lien had been recorded. This was an error on the part of the marine broker, not South Coast. South Coast had no control over the marine broker's due diligence, and assumed that the marine broker had competently closed the transaction.

*AMS not harmed by the statement.* All of AMS's claimed legal expenses relate to liquidating a contested claim. Those expenses all relate to the merits of AMS's claims, not to the fact that the bill of sale was inaccurate at the time the sale closed. AMS expresses the concern that "at some ill-defined moment the buyer may successfully assert the defense of laches," page 9, but since this statement is speculative and unsupported by affidavit, not to mention mooted by the surety bond in place, AMS has provided no statement demonstrating that AMS was harmed by the sale of the vessel.

<u>If the bill of sale had provided that the sale was subject to AMS's lien, and if the sale had closed anyway, AMS would be in the same position that it is now. If the proffered bill of sale had provided that the sale was subject to AMS's lien, and the buyer had decided not to close because of the cloud on title, AMS would be in a worse position than it is now. Accordingly, AMS was not harmed by the statement in the bill of sale that the vessel was free and clear.</u>

PAGE 9    OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD;
AND CROSS-MOTION FOR SUMMARY JUDGMENT RE COUNT IV
H:\2501\SCOAST V. AK MARINE SURVEYORS\SOUTH COAST OPP SJ INJURIOUS
FALSEHOOD AND CROSS MSJ.WPD

*Statement privileged.* In the *Zamarello* case discussed above, a jury found that Zamarello had no right to record a quitclaim deed, and knew that he had no right to record the deed, and caused pecuniary damage to the true owner of the property. Nevertheless, the Alaska Supreme Court held that Zamarello was nevertheless privileged to record the quitclaim deed because it was the subject of a quiet title suit he had initiated.

The case at bar is a much stronger one, for the publisher, than *Zamarello*. South Coast initiated the instant case for the purpose of clearing the lien on the Sunny Point. AMS counterclaimed, alleging injurious falsehood. Even if it were true that South Coast's bill of sale were a slander on AMS's interests in the vessel - an impossibility for the reasons set forth above - South Coast's bill of sale is still protected under the rule set forth in *Zamarello* and codified at Restatement (Second) of Torts § 587.

**Conclusion**

South Coast's statement in the bill of sale was true when made. It was executed in connection with a reasonable belief that any liens existing of record would be cleared. No party responded to the bill of sale in a manner adverse to AMS's interests. In any event, the bill of sale is privileged under the *Zamarello* rule.

For the foregoing reasons, South Coast is entitled to summary judgment on AMS's injurious falsehood claims in this case.

Dated this 5th day of December 2005.

PAGE 10    OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD;
AND CROSS-MOTION FOR SUMMARY JUDGMENT RE COUNT IV
H:\2501\SCOAST V. AK MARINE SURVEYORS\SOUTH COAST OPP SJ INJURIOUS
FALSEHOOD AND CROSS MSJ.WPD

CHRISTIANSON & SPRAKER
Attorneys for Plaintiffs

By_____/s/_____
    Cabot Christianson

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on December 5, 2005, the foregoing document was mailed to:

- Richard E. Welsh, Esq.
 PO Box 100100
 Anchorage, AK 99510

- Geoffrey Currall, Esq.
 540 Water Street, #302
 Ketchikan, AK 99901

By_____/s/_____
    Margaret Stroble

LAW OFFICE OF
CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, SUITE 302 • ANCHORAGE, ALASKA 99501
PHONE: (907) 258-6016 • FAX: (907) 258-2026

PAGE 11    OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD;
AND CROSS-MOTION FOR SUMMARY JUDGMENT RE COUNT IV
H:\2501\SCOAST V. AK MARINE SURVEYORS\SOUTH COAST OPP SJ INJURIOUS
FALSEHOOD AND CROSS MSJ.WPD

Cabot Christianson, Esq.
CHRISTIANSON & SPRAKER
911 W. 8th Avenue, Suite 302
Anchorage, AK 99501
Telephone: (907) 258-6016
Telefax: (907) 258-2026
Attorneys for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| South Coast, Inc. and the F/V SUNNY POINT, in rem,<br><br>　　　　　Plaintiffs,<br><br>　v.<br><br>Alaska Marine Surveyors, Inc.,<br><br>　　　　　Defendant.<br>─────────────────────────<br>Alaska Marine Surveyors, Inc.,<br><br>　　　　　Counterclaimant,<br>　v.<br><br>South Coast, Inc. and Barge SUNNY POINT (O.N. 604217), her engines, tackle, gear, apparel, furniture, and equipment, in rem,<br><br>　　　　　Counterclaim Defendants.<br>─────────────────────────| **Case No. A05-0090 CV (JKS)** |

**SECOND AFFIDAVIT OF THOMAS L. CRANDALL**

STATE OF ALASKA　　　　　)
　　　　　　　　　　　　　　)ss.
FIRST JUDICIAL DISTRICT　)

PAGE 1　　SECOND AFFIDAVIT OF THOMAS L. CRANDALL
　　　　　　H:\2501\SCOAST v. AK MARINE SURVEYORS\2D CRANDALL AFF.WPD

Thomas L. Crandall, being first duly sworn, states as follows.

1.  My name is Thomas L. Crandall. I am president of South Coast, Inc., plaintiff herein. I have personal knowledge of the facts stated in this affidavit.

2.  In the fall of 2004, South Coast, Inc. sold the vessel F/V Sunny Point to Box-It, LLC for the price $550,000, payable $506,000 in cash plus equipment valued at $44,000. I executed bill of sale to Box-It on September 15, 2004. As of that date, AMS had not filed any liens against the vessel.

3.  The sale closed through Kim Marine, a marine broker in Seattle, Washington. Kim Marine is a very experienced closer of marine transactions whose office is located in Seattle, Washington.

4.  My understanding of how vessel sales are closed is that the marine broker, here Kim Marine, checks the abstract of title maintained by the U. S. Coast Guard on documented vessels; and he satisfies himself that any liens that exist on the vessel as of the date of closing can be satisfied either by payment, escrow, or other arrangement. Prior to closing, Kim obtains a bill of sale from the seller which he holds until closing. The bill of sale states that the vessel is free and clear, even though at the time the bill of sale is executed there may be liens of record. At closing, Kim distributes the proceeds to the lien claimants and vessel owner in the order of priority. That is, he removes all liens at closing so that the buyer has clear title and so that the buyer's lender, if any, is in a first position on the vessel. I have been involved in numerous vessel purchase or sale transactions, and this is how all the sales that I have been involved in have been handled.

5. I do not recall at this point in time whether I saw an abstract of title on the vessel prior to September 15, 2004, or whether I simply proceeded under the assumption that the vessel closing would proceed as set forth in the preceding paragraph.

6. If, on September 15, 2004, someone had asked me who Jack McFarland was, or who Alaska Marine Surveyors, Inc. was, I could not have answered the question. I had no contact with Mr. McFarland or Alaska Marine Surveyors until after the closing.

7. At the time of these events, the marine division of South Coast, Inc., which included matters concerning the Sunny Point, were the responsibility of a South Coast employee named Eric Collins. I have reviewed Jack McFarland's email to Eric Collins dated August 25, 2004 (Exhibit A, page 17 to AMS's motion for summary judgment filed September 16, 2005), and I note that the last paragraph states that if payment is not received within 30 days, AMS intended to file a lien against the vessel. I did not know of the existence of this email or this possibility until well after the vessel sale closed.

8. According to the vessel abstract of title, on approximately September 28, 2004, AMS executed a maritime lien against the Sunny Point in the amount $19,913.44. The lien was recorded October 5, 2004. The next day, October 6, 2004, the bill of sale to the buyer was recorded, as was a preferred mortgage to the buyer's lender. (Exhibit A to AMS's motion for summary judgment re: injurious falsehood).

9. I note that two liens that were filed before October 6, 2004 were not satisfied in the closing. One is a $1,392.50 lien filed August 5, 2004 by Island Tug & Barge, and the other is the lien filed by AMS. I do not know how these liens escaped Kim Marine's attention.

PAGE 3   SECOND AFFIDAVIT OF THOMAS L. CRANDALL
H:\2501\SCOAST V. AK MARINE SURVEYORS\2D CRANDALL AFF.WPD

10. I first learned that the Island Tug & Barge lien had not been satisfied through AMS's motion for summary judgment re: injurious falsehood. On November 28, 2005, I sent funds in the amount of the lien to Kim Marine with instructions to cause the lien to be released.

11. The way I found out about the AMS lien was either from Kim Marine, or from Box-It. I do not recall the exact order of telephone calls, but several months after closing, I realized that South Coast had not received a bill of sale for the equipment that was part of the sale. It was then that I learned about the AMS lien: Box-It's response was that AMS's lien on the vessel had clouded title and that the bill of sale would be held up until the title was cleared. Kim confirmed that the AMS lien had been filed.

12. I thereupon made contact with Jack McFarlane, the owner of AMS, and in a series of phone calls and correspondence we attempted without success to resolve this matter. I was willing that South Coast pay the $4,541.14 - the sole unpaid invoice due for work performed - but McFarlane insisted on the 18% interest and, for a while, on the so-called administrative surcharge.

13. On January 12, 2005, I sent $4,541.14 to Kim Marine for him to hold in exchange for a lien release from AMS. On that day, AMS refused to accept this money. To this day, these funds remain in Kim Marine's control.

FURTHER AFFIANT SAYETH NAUGHT.

Dated August _____, 2005.

_____
Thomas L. Crandall

PAGE 4    SECOND AFFIDAVIT OF THOMAS L. CRANDALL
         H:\2501\SCOAST V. AK MARINE SURVEYORS\2D CRANDALL AFF.WPD

SUBSCRIBED AND SWORN TO before me this _____ day of December, 2005.

                                                                                                  Notary Public for Alaska
                                                                                                  My commission expires _____

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on July ____, 2005, the foregoing document was mailed to:

- Richard E. Welsh, Esq.
  PO Box 100100
  Anchorage, AK 99510

- Geoffrey Currall, Esq.
  540 Water Street, #302
  Ketchikan, AK 99901

By_____
    Margaret Stroble

LAW OFFICE OF
CHRISTIANSON & SPRAKER
911 WEST 8TH AVENUE, SUITE 302 • ANCHORAGE, ALASKA 99501
PHONE: (907) 258-6016 • FAX: (907) 258-2026

PAGE 5        SECOND AFFIDAVIT OF THOMAS L. CRANDALL
                H:\2501\SCOAST V. AK MARINE SURVEYORS\2D CRANDALL AFF.WPD