Law Office of Richard E. Welsh
P.O. Box 100100
Anchorage, Alaska 99510-0100
Attorney for Defendant

FILED
US DISTRICT COURT
DISTRICT OF ALASKA

2005 DEC 14 AM 10: 10

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| SOUTH COAST, INC. and the barge SUNNY POINT,<br><br>　　　　　　　Plaintiffs,<br><br>v.<br><br>ALASKA MARINE SURVEYORS, INC.,<br><br>　　　　　　　Defendant. | Case No. A05-0090 CV (JWS)<br><br>DEFENDANT'S JOINT REPLY & OPPOSITION RE CROSS MOTIONS FOR PARTIAL SUMMARY JUDGMENT RE INJURIOUS FALSEHOOD |

COMES NOW defendant Alaska Marine Surveyors, Inc. ("AMS") and submits its joint reply and opposition regarding cross-motions for partial summary judgment.

**I. Discussion**

A.　Jurisdiction & Choice of Law

Plaintiff concedes AMS's claim for injurious falsehood is subject to the Court's supplemental jurisdiction and governed by Alaska substantive law.

B.　South Coast is Liable for Injurious Falsehood

　　1.　*South Coast Published False Statement*

The following matters are undisputed:

◆ Several months preceding plaintiff's published warranty of clear title, SUNNY POINT was encumbered by maritime liens, which attached the moment AMS and Island Tug rendered services and the resulting debts accrued. 2 Benedict on Admiralty §22 at 2-14; 1 Schoenbaum, Admiralty and Maritime Law §9-1 at 494 (3rd ed. 1994).

Law Office of
Richard E. Welsh
P.O. Box 100100
Anchorage, AK 99510
Ph: 907/222-1721
Fax: 907/222-1997
rwelsh@gci.net

51

- Before South Coast recorded its bill of sale, AMS and Island Tug had filed their respective notices of claim of lien in conformity with statutory recording requirements.

- A lien filed in substantial compliance with these requirements "is valid against any person from the time it is filed…" 46 U.S.C. §31321(a)(2).

In its responsive pleading, South Coast does not refute this showing. Rather, it simply states "[a]t the time Mr. Crandall executed the bill of sale [on September 15, 2004], the statements in the bill of sale were true as to AMS." However, as AMS has established, this contention is both factually and legally erroneous. Moreover, by its omission, South Coast's contention implicitly concedes the falsity of the bill of sale at the time of recording – October 6, 2004.

### 2. *Statement Was Harmful to AMS's Interests*

Given South Coast's false publication, it undeniably disparaged and cast a cloud upon AMS's lien. Under the circumstances, black letter law recognizes AMS's injury and entitlement to damages. Recoverable damages include "the expense of measures reasonably necessary to counteract the publication, including litigation to remove the doubt cast upon vendibility or value by disparagement." Restatement (Second) of Torts §633(1)(b). Furthermore, this rule "is not, however, limited to the expense of bringing an action. It applies equally to the expense of defending one, if the action is the direct and immediate result of the influence of the false publication upon the conduct of third persons." Id. §633 comment k. Finally, AMS is not required to prove plaintiff's disparagement exclusively or predominantly caused it to incur legal expenses. Rather, it is enough if the falsehood was a substantial factor, i.e., one of several possible factors, but one of substantial weight, in causing the pecuniary harm. Restatement (Second) of Torts §632 and comment b.

AMS's evidence satisfies this burden. First, once Box-It realized South Coast had breached its warranty of clear title, it refused to furnish a bill of sale for equipment exchanged in part payment for the SUNNY POINT; it has persisted in its refusal until South Coast provides clear title. Crandall

Law Office of
Richard E. Welsh
P.O. Box 100100
Anchorage, AK 99510
Ph: 907/222-1721
Fax: 907/222-1997
rwelsh@gci.net

Aff., p. 4, ¶11. Accordingly, South Coast filed suit against AMS to extinguish its lien, causing AMS to incur resultant legal expense.

Second, once plaintiff served its complaint, Federal Civil Procedure Rule 13(a) compelled AMS to assert and litigate any compulsory counterclaims – a number of which arise as a direct result of the false statement contained in the bill of sale. See Verified Counterclaim, Counts III-V.

Finally, with its false publication South Coast left AMS with little practical alternative but to pursue litigation to remove the cloud on its property interest. For if AMS, which has full knowledge of South Coast's slander and Box-It's purported status as a *bona fide* purchaser, took no legal action to remove the cloud and foreclose its interest, the doctrine of laches would ultimately discharge the lien and render it valueless. See, e.g., 29 Moore's Federal Practice, §705.01[6][h] at 705-24 ("An individual with a maritime lien on a vessel watches the vessel sail in and out of an available port without arresting it at his own peril. In addition, because a maritime lien is a secret lien, laches can run quickly if a vessel is sold to a third party without notice of the lien.") Moreover, until AMS removes the cloud, its ability to profitably sell or assign its property interest is substantially impaired.

In the face of this evidence, South Coast persists in blindly arguing its falsehood did not damage AMS because: (1) AMS's lien is unaffected by the sale to Box-It; and (2) none of AMS's legal expenses arise in connection with plaintiff's false representation. However, as AMS has established, these contentions are simply devoid of merit.

> 3. *South Coast Knew Statement of Unencumbered Title Was False or Acted in Reckless Disregard of Statement's Truth or Falsity*

South Coast maintains it had no knowledge its vessel was encumbered and acted without reckless disregard of the truth or falsity of its statement because: (1) Eric Collins, head of South

Law Office of
Richard E. Welsh
P.O. Box 100100
Anchorage, AK 99510
Ph: 907/222-1721
Fax: 907/222-1997
rwelsh@gci.net

Coast's marine division, never informed Crandall of AMS's intent to record its lien; and (2) after it executed the bill of sale, South Coast assumed its broker, Kim Marine, would determine the existence of any liens and satisfy them before recording the instrument. South Coast concedes Kim committed an "error in missing AM[S]'s lien at closing time." Docket 48, p. 9. However, it maintains the court cannot hold it responsible for Kim's incompetence. Ibid.

South Coast's arguments are unavailing. First, whether Collins informed Crandall of AMS's email or intent to record its lien is immaterial. The lien had previously attached by operation of law. Furthermore, even if the content of the email was somehow material to South Coast's knowledge of the lien or reckless disregard therefor, Collins' knowledge is chargeable to South Coast. See, e.g., Kimbro v. ARCO, 889 F.2d 869, 876-77 (9th Cir. 1989) (corporate employer chargeable with, and bound by, knowledge supervisor had received while acting within the scope of his authority in reference to a matter over which his authority extended and concerning which he had a duty to report); accord, Restatement (Second) of Agency §272. With knowledge of AMS's claimed lien, at a minimum, South Coast received inquiry notice, i.e., knowledge of such facts as would lead a fair and prudent person using ordinary care to make further inquiries. In the face of such information, a person who fails to diligently inquire is charged with knowledge that would have been acquired through such inquiry. Ogle v. Salamatof Native Association, Inc., 906 F.Supp. 1321, 1326 (D. Alaska 1995).

Second, by virtue of Alaska criminal statutes, Alaska tort law, and South Coast's contractual warranty, it had a duty to ascertain any legal interest affecting the SUNNY POINT's title and, further, a duty to refrain from injuring any such interests. To fulfill these duties, in part, it utilized the services of Kim Marine. Docket 48, pp. 2, 7-9. Admittedly, Kim failed to competently perform these responsibilities. Id., p. 9. Nonetheless, South Coast is charged with knowledge of the recorded

Law Office of
**Richard E. Welsh**
P.O. Box 100100
Anchorage, AK 99510
Ph: 907/222-1721
Fax: 907/222-1997
rwelsh@gci.net

liens. For when a person owes a duty of care to others in obtaining information and delegates the task to an agent, he is imputed with the knowledge the agent should have acquired in performance of his responsibilities. Restatement (Second) of Agency §277. "In such cases, the principal is subject to liability for failing to act in light of the information which he should have acquired if he himself had done the work." Id., §277 comment b.

Finally, and most persuasively perhaps, AMS had filed its lien in full compliance with statutory recording requirements. Accordingly, from the moment of filing, the lien was valid against any person. 46 U.S.C. §31321(a)(2). Therefore, South Coast is charged with constructive notice of the lien. Hotch v. United States, 212 F2d. 280, 283 (9th Cir. 1954) (function of recording statutes is to provide constructive notice). "Constructive notice is a legal inference or a legal presumption of notice which may not be disputed or controverted." Ogle, 906 F.Supp. at 1326, *citing* 58 Am.Jur.2d, Notice, §7. "It is the law's substitute for actual notice, by which knowledge that one has, or ought to have under the circumstances, is imputed to him or her." 58 Am.Jur.2d, Notice, §7 at 483. Thus, regardless of plaintiff's various arguments and excuses, one unalterable fact remains: before South Coast recorded its bill of sale, AMS's lien, not to mention Island Tug's, was a matter of public record. Therefore, plaintiff is conclusively deemed to have had knowledge of AMS's interest prior to publication of its false statement.

Law Office of
Richard E. Welsh
P.O. Box 100100
Anchorage, AK 99510
Ph: 907/222-1721
Fax: 907/222-1997
rwelsh@gci.net

    4.    *South Coast Recognized or Should Have Recognized False Statement Likely to Harm AMS's Interests*

South Coast argues the court cannot hold it liable because it did not intend to harm AMS. Docket 48, p. 8. However, it chooses to ignore Restatement (Second) of Torts §623A(a) is stated in the disjunctive, i.e., actor either intends harm *or* recognizes or should recognize false publication likely to result in harm.

In light of undisputed principles and facts, AMS has established South Coast recognized or should have recognized its disparagement would likely result in pecuniary harm:

- The Commercial Instruments and Maritime Liens Act, 46 U.S.C. §31301 *et seq.*, successor to the Ship Mortgage Act, 46 U.S.C. §§921 *et seq.*, is designed to protect duly recorded interests against contrary claims by subsequent property claimants. See generally, Graeber v. Hickel Investment Co., 803 P.2d 871 (Alaska 1990).

- AMS is vested with a preexisting property interest in the SUNNY POINT, which it recorded prior to any transfer of title.

- With contrary knowledge of AMS's lien, South Coast purported to convey unencumbered title to Box-It.

- As was reasonably foreseeable, Box-It claims a right of ownership unencumbered by preexisting liens - a claim inimical to AMS's property interest; it has insisted South Coast procure clear title before completing the sales-purchase transaction. Crandall Aff., p. 4, ¶11.

- As was reasonably foreseeable, South Coast has sued AMS, in turn, to extinguish defendant's lien and to cure its own breach of warranty, thereby causing AMS pecuniary harm.

- As was reasonably foreseeable, plaintiff's false statement cast a cloud on AMS's lien and has substantially impaired its ability to profitably dispose of its interest, thereby causing AMS pecuniary harm.

- As was reasonably foreseeable, AMS has pursued legal action to remove the cloud, foreclose its lien, and avoid application of the doctrine of laches, thereby causing AMS pecuniary harm.

In short, given the undisputed record, a fact finder can reach but one reasonable conclusion: South Coast recognized or should have recognized its false publication would likely harm AMS's interests.

C.   South Coast Has Failed to Establish Entitlement to Privilege

Citing Zamarello v. Yale, 514 P.2d 228 (Alaska 1973), South Coast maintains that even if AMS has carried its burden for partial summary judgment, the court cannot hold plaintiff liable because it was absolutely privileged in publishing the false statement.

Law Office of
**Richard E. Welsh**
P.O. Box 100100
Anchorage, AK 99510
Ph: 907/222-1721
Fax: 907/222-1997
rwelsh@gci.net

Plaintiff is clearly mistaken. In Zamarello, the Alaska Supreme Court considered the interrelated issues of whether the intervenor's filing of a notice of lis pendens and the recording of a quitclaim deed during the course of litigation exposed him to liability for injurious falsehood. Relying on the absolute privilege accorded in judicial proceedings, the court concluded the intervenor was immune from liability.[1] Id. at 230-32.

As South Coast notes, Docket 48, p.7, Restatement (Second) Torts §587 contains the current statement of the privilege adopted in Zamarello. It provides, in relevant part:

> A party to...litigation...is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as a part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding.

Here, the only statement at issue is the one contained in South Coast's bill of sale. See Verified Counterclaim, ¶¶9, 20, 22, and 25. AMS is not claiming disparagement in relation to any statement published in the institution of or during the course of this proceeding. Thus, the only question is whether the false statement contained in the bill of sale constitutes "communications preliminary to a proposed judicial proceeding" within the meaning of §587.

Clearly, it does not:

> As to communications preliminary to a proposed judicial proceeding, the rule stated in this Section applies only when the communication has some relation to a proceeding that is contemplated in good faith and under serious consideration.

Restatement (Second) Torts §587 comment e. At the time it executed and recorded the bill of sale, South Coast maintains it had no knowledge of AMS's lien. See also, Docket 39, Exh. D, p. 2, ¶2.1(c) (in sale agreement, South Coast warranted "there exists no legal basis or grounds (known or

---

[1] In contrast to this statement of Zamarello's holding, South Coast maintains "a document may not be a slander of title if it itself is the subject of litigation. This was the holding in the Zamarello case." Docket 48, p. 6. Clearly, even the broadest reading of Zamarello fails to support such an interpretation. Moreover, if such were true, a tortfeasor generating a fraudulent deed or bill of sale, for instance, could never be held accountable – a result no court would countenance.

Law Office of
Richard E. Welsh
P.O. Box 100100
Anchorage, AK 99510
Ph: 907/222-1721
Fax: 907/222-1997
rwelsh@gci.net

unknown) for any suit, action, proceeding, claim, or investigation with respect to the [SUNNY POINT].") Therefore, it had no conceivable basis for contemplating any action and, thus, no plausible basis for invoking the aforementioned privilege.

## II. Conclusion

AMS has established no genuine issues of material fact exist and it is entitled to partial summary judgment as a matter of law. It respectfully requests the Court rule accordingly.

DATED this 14th day of December, 2005, at Anchorage, Alaska.

Law Office of Richard E. Welsh
Attorney for Defendant
Alaska Marine Surveyors, Inc.

By: _____
Richard E. Welsh
Alaska Bar No. 8806149

**Certificate of Service**
I certify I served a true copy of the foregoing this 14th day of December, 2005:

by hand delivery to:

Cabot Christianson
Christianson & Spraker   201 (new)
911 W. 8th Avenue, Ste. 302
Anchorage, AK 99501

and by U.S. mail to:

Geoffrey Currall
Keene & Currall
540 Water St., Ste. 302
Ketchikan, AK 99901

_____
Law Office of Richard E. Welsh

Law Office of
Richard E. Welsh
P.O. Box 100100
Anchorage, AK 99510
Ph: 907/222-1721
Fax: 907/222-1997
rwelsh@gci.net